COONEY BROTHERS, INC., Respondent-Appellant, *v.* STATE OF NEW YORK, Appellant-Respondent. (Claim No. 42437.)

Third Department, December 30, 1966.

*Louis J. Lefkowitz, Attorney-General* (*Jean M. Coon* and *Ruth Kessler Toch* of counsel), for appellant-respondent.

*Herman E. Gottfried* for respondent-appellant.

*Per Curiam.* This is an appeal and cross appeal from a judgment of the Court of Claims (COLEMAN, J.), awarding claimant $286,955, plus interest for the appropriation of claimant's installation.

Claimant, a gravel manufacturer, leased two adjacent parcels of land, installed heavy equipment thereon and engaged in the production of sand and gravel until the State pursuant to section 30 of the Highway Law appropriated some 26 acres from one of the parcels as a result of which the operation could no longer feasibly be continued. Claimant pursuant to its lease provisions thereupon moved its operation, including most of its equipment, to another location some three miles away at an alleged cost of some $451,000. Claimant seeks recovery for $2,005,000 for damages to leasehold interests, structures and land improvements; the State seeks to limit recovery to the statutory $3,000 prescribed by subdivision 13-b of section 30 of the Highway Law on the grounds that the plant was not located on the 26 acres actually appropriated and that it was removed to a new location after the appropriation. The trial court in its amended decision awarded $286,955 in damages to the value of claimant's installation, but rejected any award based on damages to claimant's alleged leasehold interests and for a stone crusher owned by a subsidiary of claimant which was physically located on that parcel for which no appropriation was made.

The first and most easily disposed of issue as we see it is claimant's assertion to damages to its leasehold interests. It is clear that where the agreement between the lessor and lessee provides for the reservation to the landlord of any condemnation award and terminates the lease in the event of condemnation, the lessee has no claim for injury to his leasehold interest (*Matter of City of New York* [*Allen St.*], 256 N. Y. 236; *Matter of Mayor, etc., of City of N. Y.*, 168 N. Y. 254), and while the condemnation clauses in the instant leases provide only that the lessor is to receive the award, without also expressly terminating the lessee's rights and obligations thereunder, the only reasonable interpretation to be placed on the agreement is that

such rights and obligations were impliedly terminated (see *Poillon* v. *Gerry,* 179 N. Y. 14). Thus we find that the trial court correctly denied claimant any leasehold damages.

We next pass to the problems surrounding the nature of the installation as real or personal property particularly as such considerations are affected by the actual removal of most of such installation. If the property involved had not been removed, we would have little difficulty, considering the nature of installation, in finding that it came within the definition of real property as established by the more recent condemnation cases. Clearly the fixtures here '' would have become part of the real property if they had been installed permanently by the owner of the fee '' (*City of Buffalo* v. *Michael,* 16 N Y 2d 88, 92; *Marraro* v. *State of New York,* 12 N Y 2d 285, 292; *Matter of City of New York* [*Allen St.*], 256 N. Y. 236, 240). Nor would we have any trouble in upholding claimant's right to an award for his interest. In *Marraro* v. *State of New York* (*supra,* p. 291) the Court of Appeals recently stated: '' notwithstanding a clause in a lease providing for its termination upon the vesting of title by eminent domain and that no portion of the award shall be paid to the tenant for his leasehold interest, the tenant retains the right to compensation for his interest in any annexations to the real property which, but for the fact that the real property has been taken, he would have had the right to remove at the end of his lease \* \* \*. It is thus clear that although the tenant, under such a lease, loses his right to compensation for his leasehold, he does not lose the right to be paid for his removable fixtures.'' The prime question then is the effect of claimant's removal of the installation on these general propositions. There is one line of cases going back to *Matter of City of New York* (*Triborough Bridge*) (159 Misc. 617, 633, affd. 257 App. Div. 940, mot. for lv. to app. den. 282 N. Y. 808), which holds in effect that a claimant by electing to treat what might otherwise be considered real property as personal property and removing it is estopped to assert that fixtures were involved (*Rossi* v. *State of New York,* 31 Misc 2d 205; *Mitchell* v. *State of New York,* 20 Misc 2d 374, 379). In *Matter of City of New York* (*Triborough Bridge*) (*supra,* p. 633), the court states:

'' The H. Herrmann Lumber Company has made a claim for fixtures. \* \* \* The city would pay for these fixtures because it had taken title to them. The acts of the claimant show that it contended that it had title to them. Certainly the claimant exercised full dominion over the machinery after the taking. It cannot take the inconsistent position of compelling the city to pay for property the latter never owned.

"There is not a scintilla of a taking by the city of this machinery. Then, too, the exercise of dominion over this machinery by the tenant herein indicates, on his part, an election to treat it as personalty. Having made this election he is thereby estopped, as against the condemning power, from asserting a claim that it is realty and receiving compensation for it."

On the other hand the Court of Appeals in *City of Buffalo* v. *Michael* (16 N Y 2d 88, 93) stated: "Nor does anything turn on the circumstance that the claimant's lease expired on April 1, 1960, some weeks before the city took title to and possession of the property. The significant facts are that the condemnation proceeding was begun in October of 1959, by service of a resolution of the Common Council; that the proceeding thus commenced was tried in February, 1960; and that the decision of the trial court was rendered on March 28, 1960, all before the end of the lease term. It was solely because of the city's initiation of the proceeding that the landlord had notified the tenant that the lease would not be renewed and requested it to remove the sign. *By thus forcing the premature removal of the claimant's fixture, the city effectively destroyed the value of the tenant's sign except for the salvageable portions.* * * * In short, as this court recently wrote in the *Marraro* case (12 N Y 2d 285, 291, *supra*), 'although the tenant * * * loses his right to compensation for his leasehold, he does not lose the right to be paid for his removable fixtures. * * * [T]he parties might have chosen to preserve the value of the fixtures "either by renewal of the lease or by transfer of title to the fixtures from the tenant to the owner of the fee. Choice lay with the tenant and landlord, and how that choice would have been exercised rests in speculation which does not concern the courts in this jurisdiction." (256 N. Y., p. 249.)'" (Emphasis added.) Moreover in *Whitmier & Ferris Co.* v. *State of New York* (12 A D 2d 165, 168, revg. 21 Misc 2d 70), the Fourth Department reversed a denial of an award based specifically on *Matter of City of New York (Triborough Bridge)* (*supra*), stating: "Lastly we disagree with the findings of the trial court that claimant is estopped from asserting a claim because it took possession of the signs. In some instances the State notified claimant to remove them or they would be demolished. At one site the contractor tore down the signs and claimant found them along the highway. The authorities relied on by the State are inapposite." While *Whitmier* can, perhaps be reconciled with the earlier cases on the basis that the State itself forced removal or its agents effected removal such is not possible in our opinion with the

*City of Buffalo* v. *Michael* (*supra*) case. We read that opinion to hold that since the act of condemnation forces premature removal of a fixture, the condemnor is liable when the fixture is removed by the tenant for the value of that fixture less its salvage value. Of course, such a reading directly conflicts with the holding in *Matter of City of New York* (*Triborough Bridge*) (*supra*). A claimant, however, should not be faced with the dilemma of having to leave his property on the premises and await a later resolution as to whether it is real or personal property. Accordingly, we hold that claimant's removal of the property did not preclude an award.

The trial court denied an award of damages for a primary stone crusher because it was physically located on that parcel of leased land from which no appropriation was taken and also because it was owned by claimant's subsidiary. We agree with this conclusion on the basis that this claimant is not entitled to any award.

Finally, the trial court accepting claimant's expert testimony (the State introduced no proof as to damages asserting rather that none were due beyond the $3,000 statutory figure prescribed by Highway Law, § 30, subd. 13-b), found before value of $326,700 and an after value of $39,745 for damages of $286,955. We see no reason advanced to disturb this determination. It is amply clear that reproduction cost less depreciation was the only logical and adequate method to value the machinery and equipment here involved (*Marraro* v. *State of New York*, 12 N Y 2d 285, 297; see *United States* v. *Certain Property, etc.*, 344 F. 2d 142, 151), and we see no necessity to require adherence to the "unit rule" in evaluating this claimant's unique fixtures (*Marraro* v. *State of New York*, *supra*, p. 296; see *United States* v. *Certain Property, etc.*, *supra*; *United States* v. *City of New York*, 165 F. 2d 526).

We have also considered the other contentions raised by the litigants and find no basis therein to disturb the trial court's decision.

The judgment should be affirmed.

HERLIHY, J. (dissenting). For the reasons hereinafter set forth I would modify the judgment of the Court of Claims to allow only moving expenses of $3,000 pursuant to subdivision 13-b of section 30 of the Highway Law.

To allow compensation in this particular case is to extend the theory of condemnation or "taking" to include payment for items in the nature of personal property and fixtures when

there is no appropriation of such items or of the real property upon which they are situate. My research does not disclose any precedent for such an award.

I agree with the majority conclusion that the lessee has no claim for injury to the leasehold interest and that under the terms of this lease agreement, the rights and obligations of the lessee terminated when the condemnation occurred. (Cf. *Matter of City of New York [Allen St.]*, 256 N. Y. 236, 242.)

The majority herein proceeds upon the theory that the claimant is entitled to recover damages because its fixtures were taken. I would agree with them that where the State appropriates the property upon which a fixture is located, the tenant is entitled to recover the value of the fixture. (*Marraro v. State of New York,* 12 N Y 2d 285; *City of Buffalo v. Michael,* 16 N Y 2d 88.) The majority, however, seems to assume that the fixtures involved in this case were located upon the premises appropriated.

The right to remove the installed personal property is not the prime question, as suggested by the majority.

The claimant does not assert in its brief that any fixtures were located upon the premises appropriated and the record is devoid of any proof that anything classified as a fixture owned by the claimant was located on the portion of the premises appropriated with the possible exception of the ends of a conveyor. The claimant was not prevented by the State from removing its property but in fact did so. Accordingly, this award cannot be affirmed upon the theory that there was a taking of any fixture.

It may be that the majority is asserting that *City of Buffalo v. Michael (supra)* has established a new rule which in effect is that as long as an appropriation makes it necessary for someone to remove a fixture *no matter where located,* the owner of such fixture is entitled to the value thereof less salvage. In my opinion, it was not intended by that decision to hold that compensation is allowed where the fixture or leasehold interest was not itself appropriated by the State. In that case the fixture had been attached to the property appropriated and the taking certainly would have included the fixture or leasehold interest were it not for the facts that the tenant removed the fixture and the owner terminated the lease a short time prior to actual condemnation. In the present case the fixtures were not in any way located upon the parcel appropriated and the leasehold agreement terminated by virtue of its own provisions and conditions.

If the fixtures had been owned by the landowner, it would only have been entitled to consequential damages and it is thus apparent that in this case an award of compensation is not for any

direct damage to the claimant's property, but rather of consequential type since it was unable to continue operations after the appropriation. This type of damage would in a proper case be part of leasehold damages, however, in the present case the claimant is not entitled to any leasehold damages. As it was stated in *Rochester Refrigeration Corp.* v. *State of New York* (25 A D 2d 943, 944): "One cannot be compensated for loss of value caused by the taking of property of another unless a property interest of some type exists in the appropriated parcel." (Citations omitted.) The decisions on which the majority relies are premised on the awarding of damages, direct or indirect, for the appropriated property and, therefore, are not controlling.

Here the claimant tenant by virtue of the leasehold agreement is in a position of not being entitled to compensation as the result of the appropriation by the State. The predicament, unfortunate as it may be, was not the creation of the State but the result of a voluntary act of the claimant in entering into a lease which provided for the right to remove the personal property, and in so doing to be financially responsible for the cost thereof. The terms of the lease control. (See *Matter of City of New York* [*339 Grand St. Corp.*], 10 A D 2d 498, 500.) Regardless of what label is applied, the present award can only be interpreted to be for the cost of moving fixtures from property not appropriated by the State. Albeit, admittedly, not analogous, it is similar to the situation where a user of a public thoroughfare for utilities is unable to recover damages for the moving of such utilities where a later public use of the thoroughfare requires the removal of the utilities. (See *New York Tel. Co.* v. *City of Binghamton,* 18 N Y 2d 152.)

Under the law, as presently restricted, there is no basis for an award for fixtures, cost of cure, consequential damages or loss of access, because there was no appropriation of the real property on which the claimant's personal property was located.

We are not concerned here with a rule of damages. We are concerned with a fundamental principle of condemnation, that the right to recover any damage is premised on the taking of the land for which damage is sought, direct, consequential or both. We should be chary of such drastic departures from existing law but if such is to be the rule, it should be clearly defined for the benefit of the Bench and Bar.

The State concedes and affirmatively argues upon this appeal that the claimant is entitled to moving expenses of $3,000 pursuant to subdivision 13-b of section 30 of the Highway Law and, therefore, such expenses should be awarded to the claimant.

The judgment should be modified by reducing the award to $3,000 and, as so modified, affirmed.

GIBSON, P. J., REYNOLDS, STALEY, JR., and BRINK, JJ., concur in *Per Curiam* opinion; HERLIHY, J., dissents and votes to modify and reduce award to $3,000.

Judgment affirmed, with costs.